244 N.J. Super. 20 (1990)
581 A.2d 518
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
MARION E. BILSE, WILLIAM BILSE, ROBERT A. HASTINGS AND ERIC C. HASTINGS, DEFENDANTS.
Superior Court of New Jersey, Law Division Passaic County.
Decided May 18, 1990.
*23 Joseph A. Del Russo for plaintiff (Ronald S. Fava, Prosecutor of Passaic County, attorney).
Adolph J. Galluccio for defendant Marion E. Bilse (Browne & Galluccio, attorneys).
Joseph T. Afflitto for defendant William Bilse (Diamond, Afflitto & Raimondi, attorneys).
David Edelberg for defendant Robert A. Hastings (Kalman Harris Geist, attorney).
William J. De Marco for defendant Eric C. Hastings.
*24 PASSERO, J.S.C.
The issue before this court involves the standards to be applied in determining whether to reject a plea agreement as not serving "the interests of justice."
R. 3:9-3(e) of the rules governing criminal practice empowers a court to vacate a plea agreement "if at the time of sentencing the court determines that the interests of justice would not be served by effectuating the agreement reached between prosecutor and defense counsel...."
There is no New Jersey case which explicitly sets forth the criteria to be employed by a court to justify rejecting a plea agreement for this reason.

Factual Background.
Defendants are the mother, stepfather and two brothers of the victim and were indicted for various criminal offenses, including attempted murder, aggravated assault in the second and third degrees and burglary.
These charges stemmed from a violent altercation between the victim and his defendant-relatives, which took place inside the victim's home. (The victim claimed he was tied up by defendants, who then proceeded to beat him with their fists and feet and stabbed at him with a screwdriver.)
None of defendants has ever had any prior contact with the criminal justice system, except for one who committed a simple assault six years ago.
A plea agreement was finalized between the State and the defense attorneys, wherein defendants pled guilty to aggravated assault in the third degree. Under the terms of the plea agreement, the remaining charges contained in the indictment would be dismissed and defendants would receive noncustodial sentences.
*25 The prosecutor entered into the plea agreement with full knowledge of the victim's strenuous objections to the terms of the plea agreement.
At the time of sentencing, the victim had apprised this court, both in writing and verbally in open court, of his strenuous objections to the plea agreement.

Decision.
This court must either approve the plea agreements and sentence defendants according to their terms or reject the plea agreements as not serving "the interests of justice."
Plea bargaining has long been recognized as a necessary and pragmatic tool to effectuate the efficient and fair administration of justice. State v. Taylor, 80 N.J. 353, 403 A.2d 889 (1979); Santobello v. N.Y., 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Plea bargaining "is widely viewed as an appropriate accommodation of the conflicting interests of society and persons accused of crimes and as a needed response to an ever-burgeoning case load." State v. Barboza, 115 N.J. 415, 420, 558 A.2d 1303 (1989).
There are basically two types of plea bargaining: a "sentence bargain," where defendant pleads guilty in exchange for a recommendation by the State that defendant will not receive a more severe sentence than agreed upon; and a "bargain," wherein defendant will plead guilty to one or more charges contained in the indictment or to a "lesser-included" charge on condition that the other charges pending against defendant will be dismissed. There are, of course, numerous variations and combinations of these two general types of plea agreements. See generally 31 N.J. Practice (Arnold, Criminal Practice and Procedure) (2 ed. 1976) § 404 at 418-419; R. 3:9-3(b).
Implementation and finalization of any plea bargain involves a two-step procedure: (a) entry of a plea of guilty pursuant to a *26 plea agreement; and (b) sentencing in accordance with the plea agreement or vacation of the plea. R. 3:9-2.
R. 3:9-2 sets forth the predicates to be met before a court accepts any plea of guilty pursuant to a plea agreement. This rule assures that the plea: contains an adequate factual basis to be given by defendant, is made with an understanding of the nature of the charges and consequences of the plea, and is made voluntarily.
Compliance with these prerequisites to the acceptance of any plea affords due process to a defendant who waives important constitutional rights by the entry of the plea; ensures that the proscribed conduct falls within the elements of the offense to which the defendant pleads; affords the court an opportunity to observe the conditions under which the plea is made and provides a record for appellate review. See State v. Barboza, supra, 115 N.J. at 420-421, 558 A.2d 1303.
The rules do not contemplate that the court, as a precondition to the acceptance of a plea, examine the rationale for the State's proffer of a particular plea or to otherwise pass on the relative merits of a particular plea offer.
The court is in a position to take a closer look at the merits of a particular plea agreement at the time of sentencing. Court rules and statute dictate that, before imposing sentence, the court receive a presentence report. N.J.S.A. 2C:44-6; R. 3:21-2; cf. Fed.R.Crim.P. 11(e)(2).
This presentence report is based on an investigation, which includes an analysis of the circumstances attending the commission of the offense; defendant's family and criminal history; a statement by the victim, which may include the nature and extent of the harm inflicted upon the victim; and other pertinent information.
It is at this juncture that the court is in a position to either sentence in accordance with the plea agreement or to reject the plea agreement as "not being in the interests of justice."
*27 A court can deal with a "sentence bargain" or the sentencing component of a plea agreement in a relatively strightforward manner.
The Code of Criminal Justice, N.J.S.A. 2C:1-1 et seq. (hereinafter "code"), sets forth specific guidelines to which a sentence for a specific offense must conform. R. 3:21-4(e); N.J.S.A. 2C:44-1 to 2C:44-3.
Sentences imposed as a result of a guilty plea, entered as part of a plea agreement, must be within the sentencing guidelines established by the code. See State v. Sainz, 107 N.J. 283, 526 A.2d 1015 (1987). It follows that a plea agreement involving an illegal sentence is not enforceable. See State v. Nemeth, 214 N.J. Super. 324, 519 A.2d 367 (1986).
Because a court is obligated to sentence in accordance with code criteria, a prosecutor cannot commit the judge to a particular sentence. See State v. Taylor, 49 N.J. 440, 231 A.2d 212 (1967). The bargain may only contain an upper limit to which a defendant subjects himself at the time of sentencing.
Where a court rejects a plea agreement because of sentencing factors  the court does so because of its obligation to sentence in accordance with the sentencing criteria mandated by the code. This is not a rejection of the plea agreement utilizing the literal sense of the "interests of justice" standard.
However, a "plea agreement," involving a downgrade or a plea to one or more charges with the remaining charges being dismissed directly, invokes the "interests of justice" standard, which governs the court in deciding whether to vacate or accept that "plea bargain." In defining this standard, the preliminary inquiry is the extent to which the court must defer to the judgment of the prosecutor to give such a "bargain" (a downgrade or a plea to a lesser-included offense on condition that the remaining charges, including more serious charges, be dismissed). In United States v. Ammidown, 497 F.2d 615 (D.C. Cir.1973), the court of appeals held that the court cannot *28 reject such a "bargain" absent an abuse of prosecutorial discretion. There the court of appeals stated:
The judge may withhold approval if he finds that the prosecutor has failed to give consideration to factors that must be given consideration in the public interest, factors such as the deterrent aspects of the criminal law. However, trial judges are not free to withhold approval of guilty pleas on this basis merely because their conception of the public interest differs from that of the prosecuting attorney. The question is not what the judge would do if he were the prosecuting attorney, but whether he can say that the action of the prosecuting attorney is such a departure from sound prosecutorial principle as to mark it an abuse of prosecutorial discretion.
In like vein, we note that a judge is free to condemn the prosecutor's agreement as a trespass on judicial authority only in a blatant and extreme case. In ordinary circumstances, the change in grading of an offense presents no question of the kind of action that is reserved for the judiciary. [Id. at 622]
Similarly, the court of appeals in United States v. Barker, 681 F.2d 589 (9 Cir.1982) (citing United States v. Ammidown, supra, 497 F.2d at 620) stated:
The district judge has discretion to accept or reject the plea that results from the Government's negotiations. We assume the judge also has a supervisory duty to determine, from the standpoint of the public interest, after considering the nature of the charges and facts involved, whether reducing the plea is so unreasonable that the prosecutor is not properly carrying out his function. [681 F.2d at 592]
The holding in Ammidown gives vitality to the separation of powers between the judicial and executive (as represented by the prosecutor) branches of government; it recognizes the legal consequences which emanate from a plea of guilty pursuant to a plea agreement and promotes the public policy advanced by plea bargaining.
The prosecutor, who tenders a plea offer, has always been regarded as a representative of the executive branch of government. It has been stated that "the prosecutor is the foremost representative of the executive branch of government in the enforcement of criminal law." State v. Winne, 12 N.J. 152, 171, 96 A.2d 63 (1953).
As a representative of the executive branch of government, "the prosecutor has been vested with broad discretionary powers ... whether to institute criminal proceedings ... [and] the *29 prosecutor need not present the maximum charges sustainable under the facts...." In re Investigation Regarding Ringwood Fact Finding Comm., 65 N.J. 512, 526, 324 A.2d 1 (1974).
"The decision to negotiate a plea bargain and seek dismissal of the indictment is within the executive's undeniable discretion to decide not to pursue a particular prosecution any further." United States v. Barker, supra, 681 F.2d at 591 (quoting United States v. Myles, 430 F. Supp. 98, 101 (D.D.C. 1977)).
While this prosecutorial discretion is very broad, it is not absolute "and it may in appropriate circumstances be rejected for arbitrariness or abuse." In re Investigation Regarding Ringwood Fact Finding Comm., supra, 65 N.J. at 516, 324 A.2d 1; State v. Le Vien, 44 N.J. 323, 327, 209 A.2d 97 (1965).
A plea validly entered pursuant to a plea agreement has certain attributes and consequences:
1. The terms and conditions of the plea agreement must be "meticulously carried out." State v. Jones, 66 N.J. 524, 333 A.2d 529 (1975).
2. A defendant will not be permitted to withdraw his plea of guilty simply because of a "whimsical change of mind" or a "belated assertion of innocence." State v. Huntley, 129 N.J. Super. 13, 18, 322 A.2d 177 (1974). A defendant's claim "to be relieved of the consequences of his plea must be weighed against the strong interests of the State in its finality." State v. Taylor, supra, 80 N.J. at 362, 403 A.2d 889.
3. The results of the plea bargain must not disappoint the reasonable expectations of either side. State v. Thomas, 61 N.J. 314, 321, 294 A.2d 57 (1972).
4. In making a plea agreement, defendant waives certain Constitutional rights, etc. State v. Warren, 115 N.J. 433, 558 A.2d 1312 (1989).
5. The State also waives "important prosecutorial prerogatives...." Ibid.
*30 6. The approved philosophy of plea bargaining is dependent upon the good faith of both sides in carrying out the bargain. State v. Huntley, supra, 129 N.J. Super. at 18, 322 A.2d 177.
7. Defendant's reasonable expectations from the terms of the bargain must be met. State v. Rodriguez, 179 N.J. Super. 129, 135, 430 A.2d 957 (1981).
8. A plea agreement cannot be modified unilaterally by the prosecutor. State v. Barboza, supra, 115 N.J. at 422, 558 A.2d 1303.
A court has basically the presentence investigation to guide it in determining whether the prosecutor has abused his discretion.
Practically, a court cannot, and indeed should not, conduct a mini-trial so as to analyze the relative strengths and weaknesses of the State's case or review all pertinent discovery. The court should not substitute its judgment as to the relative merits of a proffered plea agreement unless clearly warranted by the facts readily available to the court through the presentence report. Due deference must be given to the discretion of a prosecutor in tendering a plea agreement. In State v. Sainz, supra, the Court noted that while a trial court may view "the whole person" and all the circumstances surrounding the commission of the offense  "what is important  when the court goes beyond defendant's admission or factual version  is that the court not sentence defendant for a crime that is not fairly embraced by the guilty plea." 107 N.J. at 293, 526 A.2d 1015.
... the trial judge's review of a plea agreement is not a forum for consideration of the factual basis of the abandoned charges. Any determination as to the defendant's guilt or innocence is restricted to the specific charge to which the defendant has agreed to plead guilty. In accepting the plea to the lesser offense, the judge is not free to consider conviction or acquittal on the more serious offense. In the context of a plea hearing, the latter charge is not before him.
[United States v. Barker, supra, 681 F.2d 589, 592 (9 Cir.1982)]
*31 When we speak of prosecutorial discretion and the deference accorded to that discretion, we are dealing with a term not susceptible to a precise definition. "Discretion" is a term, conceptual by nature, and gains meaning by reference to its qualities and characteristics, which include:
1. "When applied to public officials, `discretion' is the power conferred upon them by law to act officially under certain circumstances according to the dictates of their own judgment and conscience and uncontrolled by the judgment or conscience of others." Schneider v. Hawkins, 179 Md. 21, 16 A.2d 861, 864 (App.Ct. 1940).
2. "Discretion in performing an act arises when it may be performed in one, two, or more ways, either of which would be lawful, and where it is left to the will or judgement of the performer to determine in which way it shall be performed...." Texas Indem. Ins. Co. v. Arant, 171 S.W.2d 915, 919, n. 1 (Tex.Civ.App. 1943).
3. "A judicial act is said to lie in discretion when there are no fixed principles by which its correctness may be determined ... such determinations are not subject to review on appeal...." Palliser v. Home Telephone Co., 170 Ala. 341, 54 So. 499, 500 (1911).
See Smith v. Smith, 17 N.J. Super. 128, 85 A.2d 523 (App.Div. 1951), for an analysis of the parameters of "judicial discretion."
In conclusion, it is the opinion of this court that it cannot reject a plea agreement unless the sentence bargain of that agreement contravenes the sentencing criteria of the code and/or the court can rationally conclude from the record before it that the prosecutor has abused his discretion.
In this case, and for the reasons stated on the record in open court, this court has concluded that the plea agreement should not be vacated, that the sentencing portion of the plea agreement is within the sentencing criteria of the code and that *32 the prosecutor has not abused his discretion in tendering the plea agreement given to each of the four defendants.